[Cite as *State v. West*, 2011-Ohio-5476.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

TRACY T. WEST

    Appellant

C.A. No.     25434

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 09 12 3841 (B)

DECISION AND JOURNAL ENTRY

Dated: October 26, 2011

BELFANCE, Presiding Judge.

{¶1}   Tracy West appeals his convictions for unauthorized use of a vehicle and receiving stolen property.  For the reasons set forth below, we affirm.

I.

{¶2}   Willie Conway owns the trucks used by All Around Trucking, an Akron based trucking company owned by his wife, and also works as the dispatcher.  Mr. West and Walter Wilson were two of Mr. Conway's drivers, though Mr. Conway had just hired Mr. West.  Mr. Conway told Mr. West to ride with Mr. Wilson on a delivery run to Florida.  Along the way, they were to stop in Atlanta, where Mr. Conway had purchased a truck at auction.  Mr. West was to drive that truck back to Akron.

{¶3}   Mr. Wilson picked Mr. West up in Cleveland in the truck he was driving to Florida.  The two men then drove down to Georgia, but the truck Mr. West was to pick up was not ready.  They continued to Florida and delivered the cargo before returning to Atlanta, only to

discover that the new truck was still unavailable. They proceeded to Virginia to make another delivery. While in Virginia, they contacted Mr. Conway to tell him that they were running low on fuel and needed money. Mr. Conway promised to wire money to them, but Mr. Wilson and Mr. West never received it. The men repeatedly called Mr. Conway to try to complete the wire transfer, but he never answered his phone. Ultimately, Mr. Wilson borrowed money from his cousin to buy gas for the trip back to Akron.

{¶4} Mr. West and Mr. Wilson arrived in Akron around midnight on Christmas Eve. Mr. Wilson refused to drive Mr. West back to Cleveland, claiming that he did not want to run out of gas on his drive back to Akron. He parked the truck in the All Around Trucking lot and suggested that Mr. West spend the night in the truck's cabin with the engine running until the gas finally ran out. Mr. West unhitched the trailer from the truck and drove the truck up to Cleveland instead of spending Christmas Eve in a truck that could run out of gas and heat in the middle of the night. Mr. West parked the truck nearby and walked home. He did not contact Mr. Conway to tell him what he had done for over three days.

{¶5} Before Mr. Conway spoke with Mr. West, he spoke with Mr. Wilson, who was still upset that he had had to borrow money from his cousin to buy gas. Mr. Conway reimbursed him for the gas, but the two men argued over Mr. Wilson's pay. Mr. Conway refused to pay Mr. Wilson because he did not give Mr. Conway the original bill of lading. Mr. Conway then learned that Mr. West had driven the truck up to Cleveland and refused to meet with Mr. Wilson until the truck was returned. According to Mr. Conway, Mr. Wilson told him that, until Mr. Wilson received his money, Mr. Conway would not get his truck back. Mr. Conway testified that he called Mr. West to ask him where the truck was and that, after Mr. West denied knowing

anything about the truck, Mr. West told Mr. Conway the truck was in Cleveland and gave him a location.

{¶6} According to Mr. Conway, the location Mr. West gave him was incorrect, which Mr. West denies. Regardless, Mr. Conway did not recover the truck in Cleveland and, upon returning to Akron after his unsuccessful search, he reported the vehicle as stolen. Akron police arrested Mr. Wilson and a warrant was issued for Mr. West, who was also arrested.

{¶7} More than a month after Mr. West had driven the truck to Cleveland, Kenneth Gibson, a fire and theft investigator for Mr. Conway's insurance agency, recovered it. Mr. Gibson testified that he had driven to Cleveland to meet Mr. West and that, when he pulled off the road to make sure of the address, he looked up and saw the truck parked in a side parking lot of a Family Dollar store. He then met with Mr. West who gave him the keys to the truck.

{¶8} A jury convicted Mr. West of unauthorized use of a vehicle and receiving stolen goods. He has raised two assignments of error on appeal.

II.

**ASSIGNMENT OF ERROR I**

"THE APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"

{¶9} Mr. West argues that his convictions for unauthorized use of a vehicle and receiving stolen goods were against the manifest weight of the evidence because he believed he was authorized to drive the truck to Cleveland. We disagree.

{¶10} In reviewing a challenge to the weight of the evidence, the appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of

fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

{¶11} A jury convicted Mr. West of violating R.C. 2913.03(B) by using a motor vehicle without authorization. R.C. 2913.03(B) provides that "[n]o person shall knowingly use or operate * * * [a] motor vehicle * * * without the consent of the owner or person authorized to give consent, and * * * keep possession of it for more than forty-eight hours." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶12} Mr. West concedes that he drove the truck to Cleveland, parked it there, and that more than forty-eight hours elapsed before Mr. Conway recovered the truck or even knew that Mr. West had it. However, he argues that the jury lost its way because he believed that he had permission to use the truck to get home because Mr. Wilson had used it to pick him up. A reasonable belief that one is authorized to use a vehicle, or that the vehicle's owner would consent to its use, is an affirmative defense against the charge of unauthorized use of a motor vehicle. R.C. 2913.03(C). However, Mr. West had the burden of proving this affirmative defense by a preponderance of the evidence. R.C. 2901.05(A).

{¶13} Mr. West argues that Mr. Conway ran a disorganized business and that Mr. Wilson's use of the truck to pick up Mr. West implied Mr. Conway's consent for Mr. West to use it to get home. He also argues that, based on his experience as a truck driver, he believed he was allowed to take the truck home as that was common practice amongst truck companies and, because he had just been hired by Mr. Conway, he did not know that Mr. Conway did not permit this. While the jury could have believed Mr. West's testimony that he believed he was

authorized to drive the truck to Cleveland, it was not required to do so. The jury could have reasonably determined that Mr. West was not credible.

{¶14} Furthermore, Mr. West admits that no one gave him permission to take the truck to Cleveland. Mr. Wilson repeatedly testified that he did not give Mr. West permission to drive the truck to Cleveland and testified that he suggested that Mr. West spend the night in the truck. Mr. Conway testified that Mr. West did not have permission to take the truck to Cleveland and that he was not responsible for the drivers' transportation to and from work.

{¶15} Additionally, Officer Paul Siegferth, who transported Mr. West from Cleveland to Akron, testified that Mr. West told him that he and Mr. Wilson were keeping the truck until they were paid. From Mr. West's statements, the jury could have inferred that Mr. West took the truck without the owner's consent in part to get home and also to hold until he and Mr. Wilson were paid. While Mr. West argues that any statements regarding a plan to keep the truck until he and Mr. Wilson were paid should be understood to have been said in anger and not to represent their true intentions, the jury was not required to make that conclusion. Officer Siegferth and Officer David Hileman testified that Mr. West and Mr. Wilson made the same claim, that Mr. Conway would not get his truck back until they were paid, at different times. From that, the jury could reasonably have determined that Mr. West knowingly took the truck without permission in order to hold it until payment.

{¶16} Mr. West admitted to driving the truck to Cleveland, parking it, and keeping the truck for more than 48 hours. Mr. Conway and Mr. Wilson testified that they did not give Mr. West permission to take the truck to Cleveland. Officer Siegferth testified that Mr. West told him he planned to keep the truck until he was paid, and Mr. West's own testimony regarding his belief that he could take the truck home could have been viewed as lacking credibility given that

the truck was not returned for over a month. Accordingly, we cannot conclude that the jury lost its way when it found that Mr. West had violated R.C. 2913.03(B).

{¶17} The jury also found that Mr. West violated R.C. 2913.51(A) by receiving stolen property. R.C 2913.51(A) provides that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." A "[t]heft offense" includes a violation of a broad spectrum of offenses in the revised code as enumerated in R.C. 2913.01(K)(1). For example, such conduct includes unauthorized use of a vehicle (R.C. 2913.03(B)) and theft (R.C. 2913.02).

{¶18} Mr. West argues that, because he had a reasonable belief that he was authorized to drive the truck, he did not commit a theft offense and, therefore, he could not have received stolen goods. As discussed above, however, the jury's finding that Mr. West violated R.C. 2913.03(B) was not against the manifest weight of the evidence. There was evidence adduced at trial from which a fact finder could reasonably conclude that Mr. West received or retained possession of Mr. Conway's property knowing or having reasonable cause to believe that the property had been obtained through the commission of a theft offense. We cannot say that the jury lost its way by finding Mr. West guilty of receiving stolen goods.

{¶19} Mr. West's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

"TRIAL COURT COUNSEL WAS INEFFECTIVE FOR NOT MOVING TO SUPPRESS OR OTHERWISE OBJECT TO THE INT[RO]DUCTION OF INCULPATORY STATEMENTS[.]"

{¶20} Mr. West argues that his trial counsel was ineffective for not moving to suppress or objecting to the introduction of his statements to Officer Siegferth. He argues that, but for the

admission of those statements, he would not have been convicted of unauthorized use of a vehicle or receiving stolen goods. We disagree.

{¶21} In order to prevail on an ineffective assistance of counsel claim, a defendant "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different." *State v. Mundt*, 115 Ohio St.3d 22, 2007–Ohio–4836, at ¶62, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687–688, 694.

{¶22} Mr. West argues that "[i]t is apparent from the transcript that these statements were obtained in violation of [his] right against self-incrimination[.]" He argues that he was under arrest and that "the evidence establishes that * * * Miranda warnings were [not] given nor were they waived." He also argues that Officer Siegferth interrogated him, pointing to Officer Siegferth's testimony that he "got some details[.]"

{¶23} Officer Siegferth's statement that he "got some details" does not demonstrate that he interrogated Mr. West, and there is nothing in the record that indicates what precisely occurred during the drive down from Cleveland. Furthermore, the record does not indicate whether or not Mr. West received his Miranda warnings. We observe that, as the record is largely silent regarding the circumstances surrounding his statements to Officer Siegferth and contains no evidence regarding his Miranda warnings, any evidence supporting his argument that the statements should have been suppressed would likely take the form of affidavits or evidence that is outside the scope of the record before us, making a petition for postconviction the more appropriate avenue for seeking relief. See *State v. Sheppard*, 9th Dist. No. 10CA0041-M, 2011-Ohio-3516, at ¶8. Regardless, based on the record before us, Mr. West has not demonstrated that

his counsel's representation fell below the objective reasonableness standard. See *Mundt* at ¶62, citing *Strickland*, 466 U.S. at 687-88, 694. Accordingly, he has failed to satisfy the first prong of the *Strickland* test and, therefore, has failed to demonstrate that he received ineffective assistance of counsel.

{¶24} Mr. West's second assignment of error is overruled.

III.

{¶25} Mr. West's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

TODD M. CONNELL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.